**Eric William STAHL, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 45S00–9207–CR–593.

Supreme Court of Indiana.

June 28, 1993.

Scott L. King, Appellate Public Defender, Crown Point, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Defendant–Appellant, Eric William Stahl, was convicted by jury of murder, a class A felony, *Ind. Code Ann.* § 35–42–1–1 (West Supp.1992), and armed robbery, a class B felony, *Ind. Code Ann.* § 35–42–5–1 (West 1986). Stahl was sentenced to consecutive terms of sixty years and twenty years, respectively.

In this direct appeal, Stahl raises the following issues:

(1) Whether the trial court erroneously refused Stahl's tendered instruction on circumstantial evidence; and

(2) Whether the trial court erroneously admitted hearsay statements of the victim.

The facts most favorable to the verdict are as follows. Louise and James McIntire operated a retail motorcycle business in Hobart, Indiana. In mid–July 1988, Stahl discussed the purchase of a motorcycle from the shop. Stahl returned to the shop on July 29, left a $100 check as a deposit, and indicated that he would return the following day to take delivery. After a telephone call to the bank about the check, Stahl was advised that he would be required to pay with cash or a certified check.

Stahl returned to the store on Saturday morning, July 30, a day the store would normally close at 3:30. He confirmed his desire to purchase the motorcycle and offered the one he already owned in trade. He telephoned three times during the day to discuss taking delivery of the new motorcycle. At approximately 4:30 that afternoon, Stahl returned to the store and

stayed until after 6:00. At around 5:00, Mr. McIntire spoke with his wife by telephone, telling her that Stahl was in the shop and that they were waiting for the purchase money to be delivered by a cashier. When later telephone calls to the shop went unanswered, Mrs. McIntire went to the shop and found her husband dead on the bathroom floor.[1] Both the motorcycle that Stahl had been negotiating to purchase and all copies of the documents pertaining to that purchase were missing from the shop.

The next day, Stahl was questioned by the police. He admitted being in the store between 4:30 and 6:00. He stated that he had paid for the motorcycle with cash and that just before he left the building, a white male entered with a weapon hidden under his belt. Additionally, Stahl turned over his copies of the sales documents on the motorcycle. After reviewing the documents, the victim's son testified that this paperwork was not signed by his father and was not completed in the same manner that his father would have completed it. A handwriting expert later identified some of the victim's purported handwriting on these documents as belonging to Stahl and not the victim. Finally, two witnesses testified at trial that Stahl had admitted shooting the victim.

### Tendered Instruction Properly Refused

Stahl asserts that the trial court erred in refusing his tendered instruction defining direct and circumstantial evidence. His tendered instruction read:

Direct evidence means evidence that directly proves a fact, without an inference, and which in itself, if true, conclusively establishes that fact.

Circumstantial evidence means evidence that proves a fact from which an inference of the existence of another fact may be drawn.

An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts.

It is not necessary that facts be proved by direct evidence. Both direct evidence and circumstantial evidence are acceptable as a means of proof.

However, circumstantial evidence alone will not justify a finding of guilty unless the circumstances are entirely consistent with the Defendant's guilt, wholly inconsistent with any reasonable theory of the Defendant's innocence, and are so convincing as to exclude a reasonable doubt of the Defendant's guilt.

The trial court refused this tendered instruction on the grounds that the evidence against Stahl was not solely circumstantial. Stahl argues that because the "vast majority of the State's case was premised upon circumstantial evidence," he was entitled to have the jury instructed on the definition of direct and circumstantial evidence with some guidance in the application of such evidence to their consideration in this case. We do not agree.

When reviewing the refusal of a tendered instruction, we determine (1) whether the tendered instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction was covered by other instructions which were given. *Lynch v. State* (1991), Ind., 571 N.E.2d 537, 539. Even if the language in the tendered instruction correctly states the law,[2] the trial court properly refused to give the instruction because the evidence in the record did not support the giving of the instruction. An instruction such as the one tendered is required only if the evidence presented at trial is *solely* circumstantial. *Nichols v. State* (1992), Ind., 591 N.E.2d 134, 136. A defendant's confession is considered direct evidence. *Id.* at 136–7;

---

1. An autopsy revealed that James McIntire died from a gunshot wound to the upper back.

2. The language in the last paragraph of the instruction was approved by this Court in *Hall v. State* (1980), 273 Ind. 507, 513, 405 N.E.2d 530, 534. Recently, however, this Court recom-

mended the use of Indiana Pattern Jury Instruction 12.01 (Criminal) (2d ed. 1991) as a clear and concise instruction on the law regarding circumstantial evidence. *Nichols v. State* (1992), Ind., 591 N.E.2d 134, 136.

*Chapman v. State* (1990), Ind., 556 N.E.2d 927, 931.

Here, there was direct evidence of Stahl's guilt. On two occasions, to two different people, he admitted shooting the victim. Thus, because there is both direct and circumstantial evidence supporting the verdict, the trial court properly refused Stahl's tendered instruction.

### Statements of the Victim Were Properly Admitted

■ Over the objection of Stahl, the victim's wife was permitted to relate the contents of the telephone conversation with her husband shortly after 5:00 p.m. while he was still at the store. The transcript shows the following:

[BY THE PROSECUTOR]

Q. Mrs. McIntire, you previously testified about some phone calls—about a phone call between yourself and your husband on July the 30th of 1988?

A. Yes.

Q. Do you recall the content of that conversation?

A. Yes, I do.

Q. And what did you say to him, and what did your husband say to you?

BY [DEFENSE COUNSEL]:

For purposes of the record we'll object on the same grounds that have already been argued.

BY THE COURT:

The objection has been made that it is hearsay, and I will explain a limitation as to how the jury may consider this evidence, but the objection is overruled.

BY THE WITNESS:

A. Jim called. It was approximately ten after five. I said, "Why aren't you home? What are you doing there? Why are you still there? Has he arrived yet?" He said, "Yes, he has. He's here now." I said, "Then why are you still there?" and he said, "Well, we're waiting for the cashier," which meant he had no money.

BY [DEFENSE COUNSEL]:

Objection.

BY THE COURT:

The commentary is stricken from the answer. Ladies and gentlemen, you must understand this ruling carefully, please. The first part of the statement regarding whether or not Eric Stahl was there is hearsay. You may not use what Mr. McIntire said as evidence that it was Eric Stahl that was there. Any conclusion you draw on that point as to whether or not it was the defendant that was there you must base on other evidence. You may only use what Mr. McIntire—what this witness says Mr. McIntire said so that you may know from that why Mr. McIntire was there, in other words, to explain why a certain course of conduct was followed, not for the truth of what he said, not that a cashier was coming, not that it was Eric Stahl that was there, but his explanation as to why he was there, so that you may view his conduct.

Stahl argues that Mrs. McIntire's testimony constituted inadmissible hearsay because it was offered to prove the truth of the assertion that Stahl was present in the shop and had no money to pay for the motorcycle he had offered to purchase. We disagree.

Hearsay is testimony in court by a witness concerning a statement made out of court by someone other than the witness, which is offered to prove the truth of the facts asserted therein, thereby resting on the credibility of the out-of-court declarant who is unavailable for cross-examination. *Miller v. State* (1991), Ind., 575 N.E.2d 272, 274. Statements of an unavailable declarant are not hearsay when the statements are not admitted for their truth. *Boyd v. State* (1986), Ind., 494 N.E.2d 284, 296, *cert. denied* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). Furthermore, the erroneous admission of hearsay evidence is not always reversible error. As this Court stated recently in *Timmons v. State* (1992), Ind., 584 N.E.2d 1108, 1112:

Indiana Trial Rule 61 provides that errors in the admission or exclusion of evidence that do not affect the substantial

rights of the parties are to be disregarded as harmless error. In determining whether error in the introduction of evidence warrants reversal, this Court must assess the probable impact of the evidence upon the jury.

The admission of the statement concerning Stahl's presence was harmless error. Stahl's own statement to the police, in which he admitted being in the motorcycle shop on the evening of the murder, had already been read into the record. In addition, the testimony of other eyewitnesses placed Stahl in the store at the time of the telephone call. Even if the admitted hearsay carried a measure of prejudice, such measure was slight and did not affect the verdict.

■ The second portion of the statement, to the effect that the victim was waiting for the cashier, was admitted by the court not for its truth, but to show why the victim was still at the store several hours after the customary closing time. Thus, the trial court correctly determined that the statement was not inadmissible hearsay.[3] In any event, there was other evidence tending to support a finding that Stahl did not arrive at the shop with the money to pay for the motorcycle. In his statement to police, Stahl claimed that he had ridden his trade-in motorcycle to Gary on the date of the murder and obtained a loan in order to purchase the new motorcycle. However, the mileage on the odometer of the trade-in revealed he could not have made such a trip. Such circumstantial evidence allowed the jury to conclude that Stahl was unable to obtain cash sufficient to complete the purchase.

■ Defendant raises one other point. Mrs. McIntire, after testifying to her husband's statement, "Well, we're waiting for the cashier," added that it "meant he had

no money." The court began its limiting instruction by saying that "the commentary is stricken from the answer." Stahl argues that this was insufficient to make the jury realize that they were to disregard the witness's remark about the meaning of the statement. However, Stahl made no objection to the adequacy of the limiting instruction. Nothing is preserved on appeal where a defendant fails to object to a limiting instruction. *Parker v. State* (1981), Ind., 425 N.E.2d 628, 634. Having failed to do so, this error is waived. In any event, the court's limiting instruction adequately informed the jury about the manner in which they were to consider the testimony.

### Conclusion

Accordingly, we affirm the conviction for murder and armed robbery.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.

---

**3.** We note that this evidence was only marginally relevant for purposes of providing jurors with information about the scene of the crime by explaining that the victim remained in the store several hours past the normal closing time. On the other hand, there was a risk that Stahl would be prejudiced if the jury was aware of the full content of the telephone conversation. Had an objection been made on relevancy grounds,

then the court's duty would have been to balance the probative value of the evidence against its prejudicial impact. *Hunter v. State* (1991), Ind., 578 N.E.2d 353, 357. Such decisions are committed to the sound discretion of the trial court, and are reversed only for an abuse of such discretion. *Id.* On this record, we could not conclude that the trial court abused its discretion.